# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT MICHAEL KALTHOFF, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> DOUGLAS COUNTY, a political subdivision of the State of Nevada, <br><br> Defendant. | Case No. 3:21-cv-00293-RCJ-CLB <br><br> **ORDER** |

On July 8, 2021, Plaintiffs initiated this case and filed a motion for a temporary restraining order enjoining Defendant Douglas County from implementing an ordinance that would impact their vacation home rental ("VHR") businesses in Tahoe Township, Nevada. Defendant was served on July 9, 2021, and it filed its response on July 12, 2021. The Court held a hearing on this matter on July 14, 2021. For the following reasons, the Court grants this motion in part.

## FACTUAL BACKGROUND

In 2005, Douglas County began to regulate VHRs by ordinance, requiring VHR owners to register, acquire a permit, renew the permit annually, and pay taxes and permitting fees. The current ordinance was enacted in September 2018 ("Prior Ordinance") and appears in Douglas County Code as Chapter 20.622. On June 3, 2021, Douglas County Board of Commissioners

adopted a new version of the ordinance that is set to take effect on July 15, 2021 ("New Ordinance"). (ECF No. 3 Ex. 2.) Plaintiffs who are either VHR owners or managers claim they will lose their livelihoods, businesses, and properties if the New Ordinance is implemented.

### 1. The Prior Ordinance

The Prior Ordinance prohibits any owner of private property within the Tahoe Township from renting their property for 28 consecutive days or less without first obtaining a vacation home rental permit for that property. Prior Ordinance § 20.622.030–050. The term "owner" is defined as any "person or entity that holds legal or equitable title to the private property." *Id.* § 20.622.040(C). The permits contemplated under the Prior Ordinance limit the overnight occupancy to any property based on the number of bedrooms in the property—"not to exceed 2 persons per bedroom plus 4 additional persons per residence." *Id.* § 20.622.090(A)(1). In terms of parking, the Prior Ordinance requires owners to "limit all overnight parking to on-site and assigned parking areas." *Id.* § 20.622.090(A)(2).

Under the Prior Ordinance, there is no limitation on the number of vacation home rental permits that can be issued, either in total or to owners individually who happen to own more than one property within the Tahoe Township. And while the Prior Ordinance sets out fines and penalties for violations of the terms and requirements of the vacation home rental permits, these fines are limited to the following: $5,000.00 for property being operated as a VHR without a permit (*Id.* § 22.622.050(B)), and $500.00 per day, up to a maximum of $10,000.00, for failure to correct or abate any violation after being given notice (*Id.* § 22.622.140(C)).

### 2. The New Ordinance

The New Ordinance makes numerous changes to the current regulation scheme. First, an "owner" of a VHR can no longer be "a limited liability company, corporation, partnership or similar commercial arrangement." (ECF No. 3 Ex. 2 § 20.622.020(C).) The New Ordinance,

however, carves out an exception for permits that have already been issued. The New Ordinance further establishes that the issuance of a vacation home rental permit is discretionary and is limited to 600 permits within the Tahoe Township. (*Id.* § 20.622.030(A) and (B).) Irrespective of the 600-permit cap, permits are also limited to 15% VHRs in single-family communities and 20% in tourist/multi-family residential communities. (*Id.* § 20.622.040(C).) Permits are further limited by allowing only one permit per family, irrespective of how many properties a single family may own. (*Id.* § 20.622.030(E)(1).)

The New Ordinance creates three different "tier classes" of permits, including Tier 1 for owner occupied VHRs which are excluded from the permit cap; Tier 2 for units capped at up to 10 occupants; and Tier 3 for units with more than 10 occupants which will further require a "VHR special use permit." (*Id.* § 20.622.030(E)(10).) The requirements that must be met before a VHR special use permit will be issued include, that the unit be located "sufficiently far away" from all other residences "so as to not create a nuisance;" that the available parking spaces be "deemed adequate" by the VHR Advisory Board; a showing of "sufficient proof" that the quiet use and enjoyment of residents will not be "unduly disturbed," or "for other reasons not specified herein which are unique to the location and circumstances related to the application." (*Id.* § 20.622.030(F).)

Under the New Ordinance, an owner is responsible for collecting "the name, address, and contact information for each renter who is 25 years or older" as well as obtaining "written acknowledgement from all renters over the age of 25 that he or she is responsible for compliance of all occupants of the VHR with all applicable laws, rules, and regulations pertaining to the use and occupancy of the VHR, and that should any violation of this chapter occur, that fines may be imposed." (*Id.* § 20.622.040(A)(5).) The VHR operator must retain this information for one year and turn over that information to "any officer of the County responsible for the enforcement of

any provision of this chapter or any other applicable law, rule, or regulation pertaining to the use and occupancy of the VHR." (*Id.*) It also mandates the VHR parties to keep and provide "the license plates of all vehicles being utilized by the occupants upon request to Douglas County officials within 2 hours after a request for such information is made." (*Id.* § 20.622.040(D)(3).) Even more, the New Ordinance states, in a section pertaining to notification that VHR operators must provide to the occupants:

> The occupants of a vacation rental home must make the property available for inspection at all times by the Community Development Director or a designee, the Sheriff's Office or the Code Enforcement Officer on a request made by any of these officials. The notice shall be placed in the unit prior to the fire and life safety inspection or other inspection by the Community Development Department Director or designee.

(*Id.* § 20.622.040(D)(10)(j).)

To compel compliance, the New Ordinance allows for fines and criminal prosecution.

- § 20.622.030(E)(5)(p) provides for a $10,000 or $20,000 fine, depending on the size of the property, for "falsifying any information contained in the application or provided to Douglas County in conjunction therewith," regardless of whether the false information was in error or not;
- § 20.622.050(C) provides for a $20,000 fine for operating without a permit;
- § 20.622.050(O) provides for a $10,000 fine for operating with a suspended permit;
- § 20.622.050(F) provides for $1,000.00 fine per day per violation until the violation is rectified to the satisfaction of Douglas County. The cumulative amount of the fine can be up to the fair market value of the home.

Section 20.622.050(J) of the New Ordinance provides that "[t]he owner may be guilty of a separate offense for each and every day during any portion of which any violation of any provision of this code is committed, continued or permitted by such person and shall be punished accordingly pursuant to 1.08.010(C)." Section 1.08.010(A) in the current Douglas County Code provides the following:

> Any person violating any of the provisions or failing to comply with any of the mandatory requirements of this code is guilty of a misdemeanor, except as otherwise specified by state law or expressly provided by this code. Unless a

different penalty is expressly provided by this code, any person convicted of a misdemeanor under the provisions of this code must be punished by a fine of not more than one thousand dollars or by imprisonment in the county jail for a period not exceeding six months, or by both fine and imprisonment.

The New Ordinance does provide an appeal process by which VHR operators may challenge notices of violations of the New Ordinance and denials for "VHR special use permits for Tier three (3) VHR rentals." The ordinance provides that the VHR Advisory Board "shall consist of five (5) members who shall be residents of the Lake Tahoe Township, a majority of which shall not be current VHR permit holders." (*Id.* § 20.622.040(A)(2).)

### 3. The Plaintiffs

The Plaintiffs are all people who are involved in the VHR business in Douglas County. They have been able to make profitable business relying upon the current ordinance scheme that stand to lose much of their business if the county implements the New Ordinance.

#### A. Robert and Katherine Kalthoff

The Kalthoffs own a VHR in Tahoe Village in Douglas County. They have a VHR permit but do not have designated parking spots for the property. (ECF No. 3 Ex. 3.) This is the only property that they own (they do not own their primary residence). (*Id.*) Their VHR provides the Kalthoff's approximately $36,000.00 per year in income which the Kalthoffs rely upon. (*Id.*) Mrs. Kalthoffs was laid off for approximately eleven months because of the COVID-19 pandemic. (*Id.*) Further, Mr. Kalthoff suffers from Scheuermann's disease, which may require Mr. Kalthoff to retire early and further rely upon their VHR's income. (*Id.*)

Plaintiffs claim the New Ordinance places the Kalthoffs VHR into question based on the new permit limitations. (*Id.*) They posit the overall permit cap is also detrimental to the Kalthoffs VHR permit—as it stands, there are 619 VHR permits issued, but the cap is 600 permits allowed. (*Id.*) Defendant however claims that there are only currently 514 permits that have been issued.

(ECF No. 10 Ex. A ¶ 30.) The Kalthoffs further assert their permit is at risk because Douglas County did not designate them any parking spots for their property, and now Douglas County's New Ordinance bases occupancy on parking designation. (ECF No. 3 Ex. 3.)

### B. Evie Viera and David Isenberg

Evie Viera and her husband David Isenberg own a single-family home in the Upper Kingsbury development in Douglas County. (ECF No. 3 Ex. 4.) Her home is a 9-bedroom 5-bathroom unit with approximately 3,000 square feet of living space. Ms. Viera's current VHR permit authorizes Ms. Viera to have 22 people occupy her 9-bedroom property and further grants Ms. Viera eight parking spaces for her property. (*Id.*) In an attempt to clarify what will happen to her VHR permit when the New Ordinance goes into effect, Ms. Viera has contacted Douglas County on several occasions and has received conflicting information. (*Id.*) Ms. Viera was informed by Douglas County, due to the new caps, she could not renew her VHR permit as Upper Kingsbury has a 15% VHR limit and is currently at 19.6%. (*Id.*) Most recently, Ms. Viera was informed that while she would be able to renew her permit, she would be reduced to two parking spaces rather than the eight she currently holds. This will limit the occupancy to Ms. Viera's VHR to eight people—for her 9-bedroom property.

Ms. Viera primarily rents her property to large groups. (*Id.*) This has created an income flow for Ms. Viera which serves as Ms. Viera's livelihood as, at 71 years of age, Ms. Viera's only other income is Social Security. (*Id.*) Further, her husband is an educator with the Oakland Unified School District. (*Id.*) So, the funds Ms. Viera makes from her VHR provide the bulk of the income her family uses for living expenses. (*Id.*) This income will likely be reduced by the parking regulations under the New Ordinance.

Defendant does not dispute Ms. Viera was provided conflicting information regarding her status of her VHR permit. It notes, however, that part of her parking situation may be reduced is

due to an oversight, which allowed to have "tandem" parking in her driveway. *See* Douglas County Code, § 20.692.030(A). This rule remained unchanged in the New Ordinance. § 20.622.060(B). It additionally points out that there has not been any official determination of the parking spaces assigned to Ms. Viera. Lastly, it states that, while there may be more than allowed permits issued in that neighborhood, the county will not decline to renew VHR permits on this basis, merely decline to issue new ones. (ECF No. 10 Ex. A ¶ 31.)

### C. World Class Property Management, Inc.

Heidi and Jeren Gunter own and operate World Class Property Management, Inc. ("WCPM"). (ECF No. 3 Ex. 5.) Through WCPM, the Gunters manage 53 short-term rentals in Douglas County in nearly every community in the Tahoe Township. (*Id.*) The income derived from WCPM is the Gunters sole source of income. (*Id.*) The Gunters collect rental income on behalf of their clients and retain a fee on the collected income. (*Id.*) WCPM's clients are made up of both individuals and entities who own rental properties with VHR permits—often with one client owning multiple VHR permits. (*Id.*) As part of its services WCPM also files VHR permit renewal applications for its clients.

If the New Ordinance goes into effect, the Gunters stand to lose portions of their business such as entities that currently hold VHR permits as well as a client who holds multiple permits. (*Id.*; ECF No. 10 at 5–6.) These limitations and inevitable loss of some clientele under the New Ordinance will impact the Gunter's business. (*Id.*)

### D. Jim Thulin and Jetco Industries

Jim Thulin owns five short term rental properties in Tahoe Township—two are owned through Jetco Industries and three are owned individually. (ECF No. 3 Ex. 6.) Mr. Thulin spent over $2,000,000.00 remodeling his properties to be better suited as short-term rentals. (*Id.*) His properties include a 7-bedroom property with parking for seven vehicles which grosses $115,000

annually; a four-unit condo that was remodeled with Douglas County's approval, to a 15-bedroom, 10,000 square foot unit which grosses $500,000 in income per year; and a 6 bedroom, 10-parking space property which averages $125,000.00 per year. Id.

Under the New Ordinance's terms, Mr. Thulin's properties would require a special use permit as Tier 3 properties for more than 10 occupants. (*Id.*) Mr. Thulin will also be prohibited from owning his properties under his entity Jetco Industries, and Mr. Thulin will be limited to only one VHR permit. (*Id.*) This will create a loss to Mr. Thulin of millions of dollars in rental revenue. (*Id.*) Even if Mr. Thulin sold his property, he claims he would lose money as these properties were remodeled for the purpose of utilizing them as VHRs. (*Id.*)

### E. Sean Ward and Zorka Aguilar

Sean Ward and Zorka Aguilar own a condominium in Tahoe Township for which they have applied for a VHR permit. (ECF No. 3 Ex. 7.) Their pending application is in limbo as a result of Douglas County's moratorium on VHR permits pending implementation of the New Ordinance. (*Id.*) The new permit cap in the New Ordinance puts Mr. Ward's VHR permit application at risk of getting denied. (*Id.*) Mr. Ward is also part owner of a business that assists in arranging for short term rentals. (*Id.*) Of the 20 property owners they represent, 12 have filed applications for VHR permit renewals or for new VHR permits which have not been acted upon by Douglas County. (*Id.*) As long as these property owners cannot renew or obtain their VHR permits, they cannot rent their properties, costing Mr. Ward's business 15–25% commission on those rentals. (*Id.*) Mr. Ward's business will further be affected by the New Ordinance's cap and restrictions on entities from obtaining VHR permits as well as the New Ordinance's limit of 1 permit per family. (*Id.*)

### 4. Legislative History of the New Ordinance

Since 2017, Defendant has been reviewing the concerns associated with VHRs after receiving complaints and feedback from the public and the Tahoe Douglas Fire Protection District.

(ECF No. 10 Ex. A.) Defendant sought to address property owners operating unpermitted VHRs, the limited availability of on-street parking in the Tahoe Township, illegal parking on roads which impacts emergency vehicle access, noise complaints from VHR occupants, and the reduction of available long-term housing for the community. (*Id.*; ECF No. 10 Ex. B.) Between March 2018 and June 2021, Defendant hosted sixteen public meetings, two public workshops, and two planning commission meetings discussing the New Ordinance. (ECF No. 10 Ex. A ¶ 29.) In October and November 2018, Defendant hosted an online survey on OpenGov regarding the possibility of new regulation of VHRs and received and reviewed over 1,000 responses. (*Id.*) Defendant then adopted the New Ordinance on June 3, 2021 to take effect on July 15, 2021.

## LEGAL STANDARD

To maintain the status quo and prevent irreparable harm, a court may issue a temporary restraining order. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974). While temporary restraining orders differ in many important respects from preliminary injunctions, the standard for granting each is substantially identical. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *V'Guara Inc. v. Dec*, 925 F. Supp. 2d 1120, 1123 (D. Nev. 2013).

A court should grant a temporary restraining order when, the moving party shows that an analysis of four factors favors enjoining the nonmovant: (1) likelihood of success on the merits, (2) likelihood of irreparable harm, (3) the degree of hardship to the parties, and (4) the public interest. *Winter v. NRDC*, 555 U.S. 7, 19–23 (2008). If the moving party can only establish "serious questions going to the merits," he can still succeed by showing that all three factors weigh towards granting the injunction and the balance of hardships "tips sharply" in that direction. *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

## ANALYSIS

1. **Success on the Merits**

Plaintiffs raise six causes of action in their motion. The Court will examine each in turn.

    A.    **Fourth Amendment – Unreasonable Searches**

Plaintiffs first contend the New Ordinance violate the Fourth Amendment in the following ways: requiring the VHR parties to turn over their occupants' information to government officials upon request and to notify the guests they must "make the property available for inspection at all times by the Community Development Director or a designee, the Sheriff's Office or the Code Enforcement Officer on a request made by any of these officers." The requirement that the VHR parties must turn over client information to government officials without a warrant was decided in a substantially similar case by the Supreme Court in *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409 (2015).

In *Patel*, the Court was analyzing whether the City of Los Angeles could mandate that hotel owners provide their guest registry to police officers upon their request or face arrest without any sort of "precompliance review before a neutral decisionmaker." *Id.* at 420. The Court found this law to be facially unconstitutional, stating, "A hotel owner who refuses to give an officer access to his or her registry can be arrested on the spot. The Court has held that business owners cannot reasonably be put to this kind of choice." *Id.* at 421.

Here, however, precompliance review is available before any penalties would be incurred. The Court noted that it "never attempted to prescribe the exact form an opportunity for precompliance review must take." *Id.* Under the New Ordinance, Douglas County would issue a "written notice of violation shall be served to the VHR owner" before penalties would be exacted against violators of the New Ordinance. (New Ordinance, § 20.622.050(L).) Then, "[a]ny VHR owner issued a notice of violation pursuant to this chapter shall have the right to appeal to the VHR

Advisory Board." (*Id.* § 20.622.060(B)(1).) As there is precompliance review as opposed to *Patel*, where the hotel owner could be immediately arrested, this case is materially distinguishable. Plaintiffs have therefore failed to carry their heavy burden that the New Ordinance is facially unconstitutional in this regard.

Plaintiffs next complain of the part of the New Ordinance which reads, "The occupants of a vacation rental home must make the property available for inspection at all times by the Community Development Director or a designee, the Sheriff's Office or the Code Enforcement Officer on a request made by any of these officials." § 20.622.040(D)(10)(j). Plaintiffs however leave off the next sentence, which reads, "The notice shall be placed in the unit prior to the fire and life safety inspection or other inspection by the Community Development Department Director or designee." (*Id.*) In context, the part does not allow for the government to search the premises at any time, it merely notes that the VHR owner must notify the occupants the premises are due for an inspection. Nonetheless, the Court finds that this notice is in violation of the Fourth Amendment as it would instruct the occupants, they may be subject to inspections at all times by a host of government officials as opposed to merely providing notice to the occupants that there is a scheduled administrative inspection. As currently drafted, this provision is unconstitutional.

      **B.**    **Eighth Amendment – Excessive Fines**

Plaintiffs next argue the fines in the New Ordinance are unconstitutionally excessive. "If the amount of [a punitive fine] is grossly disproportional to the gravity of the [ ] offense, it is unconstitutional." *United States v. Bajakajian*, 524 U.S. 321, 342 (1998). "To determine whether a fine is grossly disproportional to the underlying offense, four factors are considered: (1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of

///

the harm caused by the offense." *Pimentel v. City of Los Angeles*, 974 F.3d 917, 921 (9th Cir. 2020) (applying these factors to municipal fines).

Plaintiffs' argument is twofold on this claim. They first argue the $20,000 fine for operating without a permit pursuant to § 20.622.050(C) is violative of NRS Chapter 598. *See Bajakajian*, 524 U.S. at 336 (1998) (holding that one of the ways the courts determine whether a fine is excessive is by looking at the underlying statutes). NRS 598.0999(2) limits the civil penalties for violations of Chapter 598 to "a civil penalty not to exceed $5,000 for each violation." Section 20.622.050(C) notes operating a VHR without a permit is a "deceptive trade practice subject to the penalties found in NRS Chapter 598," but it does not state its authority for its own fine stems from the statute. As such, the Court does not find that § 20.622.050(C) violates NRS Chapter 598.

They next argue that the rest of the statutes are grossly disproportionate, and the Court agrees in part. The Courts finds it troubling that many of these fines are for several thousands of dollars without any authority to lower the fines for particular violators' circumstances. For this reason, the Court temporarily restrains Defendant from imposing a fine of greater than $5,000 for a single violation. Any violation that would be punishable of a fine greater than $5,000 shall be limited to $5,000 for the duration of this restraining order.

### C. Fourteenth Amendment – Due Process

In their third claim, Plaintiffs argue their due process rights will be infringed if the New Ordinance is implemented as currently written in three respects: (1) the New Ordinance language is impermissibly vague, (2) the VHR Advisory Board will be biased, and (3) the occupancy limit based upon parking fails the rational basis test. To satisfy due process, a statute must define an offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). "The Constitution does not require exact

specificity, but it does require that law give reasonable notice so that citizens subject to it may conduct themselves accordingly." *U.S. v. Ocegueda*, 564 F.2d 1363, 1365 (9th Cir. 1977).

As for Plaintiffs first contention, Defendant correctly points out that the vagueness issue is not ripe. "[I]n cases not involving First Amendment claims a court may only consider a vagueness challenge on the facts of the case before it. We therefore are not concerned with hypothetical situations where the term 'unlawful user' does not give an ordinary person reasonable notice; rather, our concern is whether the term is impermissibly vague in the circumstances of this case." *Id.* (internal citations omitted). As the vagueness claims do not involve a First Amendment issue,[1] the vagueness of the New Ordinance needs to be decided if Plaintiffs were actually prosecuted under the allegedly vague statutes.

Turning to the issue of bias, the Court agrees with Plaintiffs. Plaintiffs contend that the VHR Advisory Board will be impermissibly biased, or at least appear to be so, based on the requirement that the board be compiled of a majority of people who are not "current VHR permit holders." § 20.622.060(A)(2). This is correct. If there is a requirement that the VHR board be comprised of a majority of people who do not hold any tier of VHR permit, then the board would appear to be unduly biased against VHR permitholders. The Court therefore requires that the majority of the board shall be comprised of VHR Tier 1 permitholders and/or non-permitholders.

Lastly, the Court finds that the parking requirement is not rationally related to a legitimate government objective. Defendant points to illegal parking, which obstructs emergency vehicles. While this concern is legitimate, this parking is already illegal and guests may be able to park their vehicles legally elsewhere before going to the VHR. Further the limit is only four people even though many vehicles are able to seat many more. As such, the Court finds the provision that the

---

[1] Plaintiffs contend the New Ordinance violates their First Amendment right to freely assemble as discussed below. They do not however contend that the portions of affecting this claim are vague.

occupancy limit is four people per vehicle (§ 20.622.040(D)(1)) is not rationally related to Defendant's goal of preventing dangerous parking. The Court accordingly enjoins the enforcement of this provision.

### D. Fourteenth Amendment – Equal Protection

Plaintiffs argue the New Ordinance violates the Equal Protection Clause of the Fourteenth Amendment in two ways: first, "the New Ordinance limits the issuance of VHR permits to 'family trusts and individuals only' while excluding 'limited liability companies, corporations, partnerships' and other such entities from applying for or obtaining VHR permits" and second, "the New Ordinance does not apply to shareholders or developers of timeshares who often rent out units on a short-term basis, just like VHR permit holders." Plaintiffs argue these distinctions fail to satisfy the rational basis test. *See City of Cleburne, Tex. v. Cleburne*, 473 U.S. 432, 440 (1985) (holding that to satisfy this test the state's classification must be rationally related to a legitimate government interest).

Defendant argues that it wanted to promote families the opportunity to purchase homes as opposed to corporations as the basis for which it will cease to give new permits to limited liability companies, corporations, and partnerships. As Defendant cites to fears that large business entities will purchase the properties for purely commercial purposes such as VHRs. The Court finds Plaintiffs have failed to show the rational basis test is not satisfied here.

Plaintiffs' argument timeshares are unconstitutionally treated different is equally unavailing. Timeshares are a much different vacation model as opposed to VHRs; timeshare shareholders occupy a property based on their ownership of shares in the unit as opposed to paying to temporarily stay on a property. The desire to regulate these vastly different models with a differing set of ordinances is well-within a county's province. As such, the Court finds Plaintiffs have failed to show that they will likely succeed on this claim at this early stage.

### E. First Amendment – Freedom of Association

Plaintiffs next complain of the New Ordinance's requirement VHR owners agree "to not allow more than 50 people at all times and that guests of renters, exceeding the occupancy of the permit shall not be allowed during quiet hours." They contend this requirement interrupts their freedom of association under the First Amendment. This is incorrect. To succeed on this claim, Plaintiff must show some sort of "expressive association that the First Amendment has been held to protect." *City of Dallas v. Stanglin*, 490 U.S. 19, 24 (1989) (finding no right to association to people attending a dance hall). Here, Plaintiffs have not alleged their clients are attempting to congregate for any protected conduct—they are merely people who are willing to pay for a VHR.

### F. NRS 244.146

Plaintiffs lastly complain of part of the New Ordinance, which reads:

> Any person who has suffered, or alleges to have suffered, damage to person or property for a violation of this chapter may bring an action for money damages and any other appropriate relief in a court of competent jurisdiction against the owner, agent, local contact person or occupant alleged to have violated this chapter. The prevailing party in this litigation is entitled to recover reasonable litigation costs, including attorney's fees in an amount deemed reasonable by the court.

§ 20.622.050(F). This language is identical to that of the current ordinance, which has been there for approximately three years. § 20.622.160. The Court accordingly fails to find that Plaintiffs require an emergency temporary restraining order to prevent.

### 2. Scope of Injunction

Plaintiffs seek this Court to entirely postpone the implementation of the New Ordinance. The Court finds that such an injunction would not be warranted as an injunction must be "narrowly tailored to remedy the specific harm shown." *E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019). As such, the Court finds that the appropriate remedy would be to excise the problematic portions of the New Ordinance from its implementation.

### 3. Irreparable Harm

The limited restraining order from this Court will prevent irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

### 4. Balance of Hardships

The Court finds its limited restraining order balances in favor of temporarily restraining Defendant. These targeted restraints on Defendant's regulation of VHRs will protect the constitutional rights of the VHR operators as well as their occupants, while minimally impairing Defendant ability to regulate.

### 5. Public Interest

The Court also finds its limited restraining order is in the public's interest. To prevent constitutional violations is in the public's interest. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quoting *Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir. 2002)).

### 6. Bond

As Defendant will be burdened in its modifications of the New Ordinance the Court finds that a bond of $5,000 is appropriate under Fed. R. Civ. P. 65(c). The Court does not find this bond is not unduly cumbersome on the Plaintiffs as they all admit having profitable VHR businesses.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Temporary Restraining Order (ECF No. 3) is GRANTED IN PART.

IT IS FURTHER ORDERED that Defendant shall be temporarily restrained from compelling Plaintiffs from posting a notice, as required by § 20.622.040(D)(10)(j) of the New

Ordinance, which states, "The occupants of a vacation rental home must make the property available for inspection at all times by the Community Development Director or a designee, the Sheriff's Office or the Code Enforcement Officer on a request made by any of these officials."

IT IS FURTHER ORDERED that Defendant shall be temporarily restrained from imposing a fine of greater than $5,000 for a single violation. Any violation that is currently punishable with a fine greater than $5,000 shall be limited to $5,000 for the duration of this restraining order.

IT IS FURTHER ORDERED that the majority of the board shall be comprised of VHR Tier 1 permitholders and/or non-permitholders.

IT IS FURTHER ORDERED that the occupancy limit of four people per vehicle under (§ 20.622.040(D)(1) shall not be enforced.

IT IS FURTHER ORDERED that this temporary restraining order be and is hereby conditioned upon Plaintiffs filing with the Clerk of this Court no later than 5:00 P.M. on July 15, 2021, an undertaking in the form of a bond, a certified, cashier's or attorney's check, or cash, in the amount of $5,000.00 to secure the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained hereby.

IT IS FURTHER ORDERED that, unless otherwise ordered by this Court, this temporary restraining order is and shall remain in full force and effect until 5:00 P.M., August 26, 2021.

IT IS FURTHER ORDERED that Calendar Call via Zoom Video is set for 10:00 A.M. (PDT), Thursday, August 26, 2021.

IT IS FURTHER ORDERED that the parties are directed to contact the courtroom deputy Lesa Ettinger (Lesa_Ettinger@nvd.uscourts.gov or 775-686-5833) by Noon, Thursday, August 19, 2021, to provide her the e-mail address of each counsel, party and/or representative attending the hearing.

///

IT IS FURTHER ORDERED that the following Video Conference Instructions be adhered to as follows:

INSTRUCTIONS FOR VIDEO CONFERENCE HEARING:

Instructions to the scheduled hearings will be sent via email ONE (1) day prior to the hearing to the participants email provided to the Court.

1. Log on to the call ten (10) minutes prior to the hearing time.
2. Mute your sound prior to entering the hearing.
3. Do not talk over one another.
4. State your name prior to speaking for the record.
5. Do not have others in the video screen or moving in the background.
6. No recording of the hearing.
7. No forwarding of any video conference invitations.
8. Unauthorized users on the video conference will be removed.

IT IS FURTHER ORDERED that the Public may access and listen to the Hearing as follows: Public telephonic participants shall call AT&T no later than five (5) minutes prior to the hearing at 1 (888) 675-2535. Access Code is 2900398 Security Code 082621.

IT IS FURTHER ORDERED that persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings or any other sanctions deemed necessary by the court.

IT IS SO ORDERED.

Dated July 15, 2021.

_____
ROBERT C. JONES
United States District Judge